**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**LOUISIANA TRAILER SALES, INC., Defendant.**

**Civ. A. No. 67–2.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 19, 1968.

icing automobiles, trailers, trucks, farm implements, or aircraft if employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles to ultimate purchasers." [1]

Plaintiff contends that this provision does not exempt employees known as "servicemen" and "servicemen-mechanics" whose primary duties consist of preparing the type of trailers known as mobile homes for delivery, making service calls after delivery to repair or maintain equipment warranted by their employer, and repairing and refurnishing used trailers for resale.

The Secretary suggests that the term "mechanic" as used in the exemption is intended to include only those employees who are actually engaged in the kinds of maintenance and repair operations traditionally performed in the automotive industry, that is, operations performed on the running mechanisms of the trailers, such as the wheels, axles, and brakes. He urges that the exemption does not cover employees whose duties include driving the vehicles that move trailers from place to place, or performing work on mobile homes such as hooking up water and sewer connections, repairing and replacing wooden parts, repairing and replacing metal panels, repairing electrical wiring, installing and repairing heating and air conditioning, and repairing roofing.

The precepts of statutory construction urged on the Court by both sides furnish little guidance here. Like Justice Frankfurter, "I confess unabashedly that I do not get much nourishment" [2] from them. Nor can much more aid be found in "the acres of paper and streams of ink that have been devoted to the discussion" [3] of how to interpret statutes.

The words of the statute import no ambiguity. They exempt "any * * * mechanic primarily engaged in * * *

---

Edwin G. Salyers, Atlanta, Ga., for plaintiff.

Louis A. DiRosa, New Orleans, La., for defendant.

RUBIN, District Judge:

The sole issue presented in this case is the interpretation to be given the provision in the Fair Labor Standards Act exempting from coverage:

"any salesman, partsman, or mechanic primarily engaged in selling or serv-

---

1. 29 U.S.C. § 213(b) (10).

2. Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum.L.Rev. 527, 530 (1947).

3. J. Learned Hand, United States v. Klinger, 2 Cir., 1952, 199 F.2d 645, 648, aff'd 1953, 345 U.S. 979, 73 S.Ct. 1129, 97 L.Ed. 1393.

servicing \* \* \* trailers \* \* \*." The words indicate no intention to restrict the term "mechanic" to an "automotive mechanic" nor to limit the term "servicing" to the automotive portion of the trailers. Laymen as well as lawyers would read the words without any such restrictions.

If therefore, a limitation is to be implied, it must be found either in the surrounding words of the statute or in an unarticulated but underlying Congressional intention. Neither is discernible here.

The surrounding words of the exemption indicate no intention that it refer only to the kind of mechanic who does automotive work. "Salesmen" are embraced even though they sell only mobile homes in which the automotive portions comprise but a small part of the total value. A mechanic who services any part of a farm implement likewise appears to be exempt, whether or not his work relates to the propelling mechanism.

Nor do we find in the Congressional history of the adoption of this amendment any indication that Congress intended to limit the words it used. The exemption was adopted in 1966.[4] Before then, the statute provided no exemption for persons who sold or serviced trailers. It exempted *"any employee* of a retail or service establishment which is primarily engaged in the business of selling automobiles, trucks, or farm implements."[5] (Emphasis supplied.)

When Congress considered amending the Fair Labor Standards Act to broaden its coverage in the retail field, it was urged by the retail automotive industry to continue to exempt all of its employees.[6] Congress decided instead to limit the exemption to "any salesman, partsman or mechanic." One witness before the Committee did state that the primary work force of an automobile dealer is "composed generally of salesmen, repair mechanics, servicemen, and clerical workers."[7] The use in the statute of the term "mechanic primarily engaged in servicing" implies no intention to limit the statute to the term "repair mechanics," as used by this witness or to exclude "servicemen." Indeed if the difference between the words used in the statute and those employed by the witness has any meaning whatever, it indicates an intention to broaden the scope of the coverage.

Plaintiff urges an implication of Congressional intention from other fragments of testimony that are even less persuasive.[8] No committee report, no floor statement, no argument in debate is offered as a basis for the Secretary's supposition of Congressional intent. The only definition of the term "mechanic" found in the report of the committee that recommended the bill states:

"The term 'mechanic' is intended to include all employees doing mechanical work, such as get-ready mechanics, automobile, truck, farm implement, or aircraft mechanics, body or fender mechanics, used car reconditioning mechanics and wrecker mechanics."[9]

By including "get ready mechanics" and mechanics who work with "farm implements," neither of whom perform tra-

4. Section 13(b) (10) of the Fair Labor Standards Amendments of 1966, 29 U.S.C. § 213(b) (10).

5. 29 U.S.C. § 213(a) (19) (superseded by 1966 amendments).

6. "Hearings before the General Sub-Committee on Labor and Commission on Education and Labor," House of Representatives, 89th Congress, 1st Session, H.R. 8259, Part. 2, pp. 370–371.

7. Id. at pp. 366–370, testimony of Sam H. White, Chairman, Governmental Relations Committee, National Automobile Dealers Association.

8. Id. at pp. 657–662, testimony of George Edwards, Mobile Home Dealers National Association.

9. House Report No. 871, 89th Congress, 1st Session, H.R. 10508, Section 209; House Report No. 1366, 89th Congress, 2d Session, H.R. 13712, Section 209.

ditional automotive mechanical work, the report implies that Congress did not intend the exemption to be construed as narrowly as plaintiff urges.

If we resort to dictionaries for definitions of the term "mechanic" we find that the word is defined broadly to mean an artisan, anyone possessing mechanical skills, and the like.[10]   But this is not definitive.

■ It may distort a statute to attempt to find its meaning by isolating one word from the text and examining it microscopically.   Words can be only the skin of thought, and they take their force from the muscle of context.   When we examine the entire phrase used in the statute, it is apparent that to limit the statute as the Secretary suggests is to supply words to it that defeat the Congressional intent instead of achieving it.

■ The Fair Labor Standards Act was designed to remedy "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." [11]   The Act is to be "construed liberally to apply to the furtherest reaches consistent with congressional direction."   Mitchell v. Lubin, McGaughy and Associates, 1959, 358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed. 2d 243.   Thus it is not to be read restrictively but generously and with Congress' purpose in mind.   Mitchell v. C. W. Vollmer and Company, 1955, 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196; Mitchell v. Empire Gas Engineering Co., 5 Cir. 1958, 256 F.2d 781.   And it can not be doubted that exemptions are to be extended only to those whom Congress clearly intended to exclude.   But the statute speaks loud and clear with respect to the employees involved here.

For these reasons, the claims of plaintiff are dismissed as to the trailer mechanics covered by the stipulation of fact.   Defendant will prepare a proposed form of judgment and submit it to opposing counsel for approval.

10.  Webster's Third New International Dictionary, 1967, p. 1400.