**D. W. SNELL, Appellee,**

v.

**QUALITY MOBILE HOME BROKERS, INC., d/b/a A to Z Mobile Homes, Appellant.**

**No. 13613.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 4, 1970.

Decided April 6, 1970.

**234**

---

Charles M. Gibson, Charleston, S. C. (Coming B. Gibbs, Jr., and Gibson, Gibbs & Krawcheck, Charleston, S. C., on brief), for appellant.

John M. Bleecker, Jr., Charleston, S. C., for appellee.

Anastasia T. Dunau, Atty., Dept. of Labor (L. H. Silberman, Solicitor of Labor, Bessie Margolin, Associate Solicitor, Beverley R. Worrell, Regional Solicitor, and Carin Ann Clauss, Atty., Dept. of Labor, on brief), for amicus curiae.

Before HAYNSWORTH, Chief Judge, and WINTER and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge.

D. W. Snell brought this action against Quality Mobile Home Brokers, Inc., his former employer, to recover unpaid overtime wages and liquidated damages under the Fair Labor Standards Act. From a judgment in Snell's favor, Quality appeals arguing that Snell was exempt from the overtime provisions of the Act because he was a "mechanic primarily engaged in * * * servicing * * * trailers" within the meaning of 29 U.S.C. § 213(b) (10) (Supp.1970).[1]

For reasons that differ slightly from those expressed by the district judge, we conclude that the exemption does not apply to Snell, and consequently we affirm the judgment in his favor.

Quality operates eight lots at which it sells new and used mobile homes. These vehicles are not ordinary house trailers. Mobile homes range in width from 12 to 24 feet and may be more than 55 feet long. They contain full living accommodations and are intended to be permanent residences. While they can be towed over the road, they are so large that they require specially equipped trucks or tractors. They can be moved only during daylight hours and each trip requires a special highway permit. After delivery, they are connected to water, sewage, and electrical utilities.

From August 1967 until August 1968, Quality employed Snell at its Charleston, South Carolina, lot as its service and delivery man. Snell's duties can be divided into four categories: (1) preparation of the mobile homes for sale; (2) towing them to purchasers' sites, and towing used homes back to Quality's lots; (3) clearing sites, preparing foundations, setting mobile homes in position, and connecting them to utilities; and (4) servicing and repairing furnaces, air conditioners, and appliances in mobile homes previously sold and delivered. His work did not require any special me-

---

1. Title 29 U.S.C. § 213(b) (10) (Supp. 1970) provides:

"(b) The provisions of section 207 [overtime pay] of this title shall not apply with respect to—

*    *    *    *    *

"(10) any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trailers, trucks, farm implements, or aircraft if employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles to ultimate purchasers; * * *."

chanical training, but it involved a wide variety of skills including plumbing, carpentry, electrical work, truck driving, and appliance repair.

The district court held that a mobile home is not a trailer and Snell was not a mechanic within the meaning of the exemption. Quality urges us to reverse the district court on both scores.[2] While there is considerable merit to the conclusion reached by the district court, we will, as Snell urges, adopt a middle ground the Secretary of Labor suggests in his brief as amicus curiae.

The Secretary ascribes to mobile homes a dual identity. He recognizes them as trailers for the purposes of the exemption to the extent that they are transported from place to place on their own wheels and suspension systems. But when a mobile home has been delivered to its site, mounted on a base, and connected to utilities, he argues, it loses its character as a trailer. Thus, while Snell was servicing the mobile homes on his employer's lot and preparing them for sale, the Secretary and Snell concede that he was a get-ready mechanic within the meaning of the exemption.[3] However, while he was hauling the mobile home over the highway for delivery to the site, the Secretary continues, he was not a mechanic but instead was a truck driver. When he permanently installed the mobile home on its site and subsequently made service or repair calls, the Secretary says he was engaged in construction work and servicing home appliances.

The Secretary's position accords with the maxim that exemptions from the Act are to be narrowly construed. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960). And it rationally complements the 1966 extension of the Act to additional construction workers.[4]

The Act does not define "mechanic"[5] or "trailers," but it is apparent from its language and from the legislative history that Congress did not intend to exempt an employee who was primarily engaged in truck driving, construction work, or servicing appliances. Prior to 1966, the Act exempted all employees of automobile, truck, and farm implement dealers.[6] The 1966 exemption named only three specific classes of employees—salesmen, partsmen, and mechanics. As originally proposed, the exemption applied only to selling and servicing automobiles, trucks, farm im-

---

2. Quality relies on Wirtz v. Louisiana Trailer Sales, Inc., 294 F.Supp. 76 (E.D. La.1968). We agree with this case to the extent that it exempts a get-ready mechanic who works on mobile homes, but we disagree with its exemption of an employee who services mobile homes after they have been installed on purchasers' sites. Quality also relies on a number of zoning cases which hold mobile homes to be trailers. We find this approach to the problem to be inconclusive, for a number of other cases hold that they are not trailers. Decision turns on the precise language of the zoning ordinance and the use of the mobile home. Compare City of Rutland v. Keiffer, 124 Vt. 357, 205 A.2d 400, 403 (1964) with In re Willey, 120 Vt. 359, 140 A.2d 11, 14 (1958).

3. The Dictionary of Occupational Titles, p. 491, summarizes the duties of a get-ready mechanic as follows: "Inspects and services new automobiles on delivery to dealer and makes minor repairs or adjustments to place vehicle in saleable condition."

4. E. g. 29 U.S.C. § 203(s) (3) (Supp. 1970). See U.S.Code Cong. & Admin. News, 89th Cong., 2d Sess., pp. 3006, 3008, 3028 (1966). The Secretary's amicus curiae brief states that in 1968 mobile homes accounted for approximately 25% of all sales of new homes and more than 75% of those costing less than $15,000.

5. H.R.Rep. No. 1366, 89th Cong., 2d Sess. 43 (1966), defines "mechanic" as follows: "The term 'mechanic' is intended to include all employees doing mechanical work, such as get-ready mechanics, automotive, truck, farm implement, or aircraft mechanics, body or fender mechanics, used car reconditioning mechanics, and wrecker mechanics."

6. See 29 U.S.C. § 213(a) (19), which was superseded by the 1966 amendment, 29 U.S.C. § 213(b) (10) (Supp. 1970).

plements, and aircraft, but an amendment providing for the inclusion of trailers was adopted on the floor of the House.[7] Thus it is plain that Congress intended to bring within the exemption mechanics who performed the type of work on trailers that other mechanics performed on automobiles, trucks, farm implements, or aircraft. We conclude, therefore, that only when Snell worked as a get-ready mechanic was he performing an exempt job. His duties as a truck driver, construction worker, and appliance serviceman did not qualify him for exemption.

■ Snell's exemption, thus, depends on whether he was, in the language of the statute, "primarily engaged"[8] as a mechanic. The record discloses that this work occupied a minor part of his time. His chief occupation was driving a truck to deliver the mobile homes, setting them up at the sites, and subsequently servicing them. Consequently, he was not exempt from the overtime provisions of the Act.

■ Finally, Quality asserts 29 U.S.C. § 260[9] relieves it of liability for liquidated damages. Quality, however, in addition to failing to pay overtime wages, consistently underpaid Snell by wrongfully refusing to credit him for all of the hours he worked. Moreover, Quality's assertion that it relied on a letter from the Wage and Hour Division to an official of the Mobile Home Dealers Association is not supported by the record. The district judge properly awarded liquidated damages and attorney's fees. Wright v. Carrigg, 275 F.2d 448 (4th Cir. 1960).

Affirmed.

---

7. 112 Cong.Rec. 11,403 (1966).

8. The Wage-Hour Administrator has held "primarily engaged" to mean more than 50% of the employee's hours of work. See 91 WHM 931 (1967).

9. Title 29 U.S.C. § 260 provides in part: "[I]f the employer shows to the satisfaction of the court that the act or

omission giving rise to [an action under the Act] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages * * *."