**Peter J. BRENNAN, Secretary of Labor, Appellant,**

v.

**BILL KIRK'S VOLKSWAGEN and William W. Kirk, Appellees.**

**No. 73–1878.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1974.

Decided June 14, 1974.

---

John K. Light, Atty. (William J. Kilberg, Solicitor of Labor, Carin Ann Clauss, Associate Sol., Donald S. Shire, Atty., Louis Weiner, Regional Sol., Dept. of Labor, on brief), for appellant.

Warren M. Davison, Baltimore, Md. (Earle K. Shawe, Jeffrey L. Levin, and Shawe & Rosenthal, Baltimore, Md., on brief), for appellees.

Before BRYAN, Senior Circuit Judge, and BUTZNER and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

This suit was brought by the Secretary of Labor under § 17 of the Fair Labor Standards Act, 29 U.S.C. § 217, to enjoin Bill Kirk's Volkswagen, Inc., and its president, William W. Kirk, Jr., from violating the Act's overtime and recordkeeping provisions and to restrain the continued withholding of unpaid wages due several of its employees. The defendants claimed that Alexander Rheubottom, the only employee involved in this appeal, performed a portion of his work before and after regular business hours as an "independent contractor" and therefore such overtime work was not subject to the requirements of the Fair Labor Standards Act. The district court rejected this defense and found that Rheubottom was an employee within the meaning of the Act. But the court also held that Rheubottom's work fell within the Act's § 13(b)(10) exemption, 29 U.S.C § 213(b)(10), which in part exempts mechanics from the overtime requirements of the Act for work performed in servicing automobiles in a nonmanufacturing selling establishment.

While we are unable to agree that Rheubottom is exempt under the exemption of 29 U.S.C. § 213(b)(10), his work may be exempt under the premium rate provision of 29 U.S.C. § 207(e)(7), and we vacate and remand with instructions.

The facts are not controverted. Since 1965, Rheubottom has been employed by Bill Kirk's Volkswagen, Inc., as a used car reconditioner. In this capacity, he buffs, paints and washes used cars. He checks periodically to insure they are in running order. When necessary, he changes batteries but otherwise he performs no mechanical tasks. In addition to these duties, Rheubottom performs other tasks of a miscellaneous nature during his 8:00 a.m. to 5:00 p.m. workday. During his regular work period, Rheubottom is paid an hourly rate of $2.-29; and he is paid at time-and-one-half, or $3.43, for any work over 8 hours a day or 40 hours in a week.

During the off-duty hours of the first four years of his employment at the company, Rheubottom performed appearance reconditioning on used cars for a friend who had his own garage. The two of them obtained cars from various dealers and the friend paid Rheubottom a fixed sum per car reconditioned at his garage. After four years, this arrangement was terminated, but Rheubottom continued to supplement his income by working after hours for another automobile dealership in the Baltimore area. Finally, in 1970, Rheubottom approached company president William Kirk with the proposal that he be allowed to perform supplemental work at Kirk's premises for a fixed price, set by Rheubottom, of $18.00 for each car he reconditioned. As Rheubottom testified at trial, the arrangement was quite satisfactory since "I avoid the travel, the expense, the overhead and the materials." Indeed, it was shown that Rheubottom has made $4,400 more by this arrangement with the company than he would have earned had he been paid at time-and-one-half figured at his base rate of $2.29.[1]

1. The Secretary of Labor contends, however, that all remuneration earned by Rheubottom in his supplemental work for the company must be added to his regular and overtime earnings. Then, that sum must be divided by the total number of hours worked (both during and after regular working hours) in order to determine Rheubottom's base rate. Thus, using the government's computation, Rheubottom's base rate becomes $4.52 per hour, and his over-

The district court dismissed the complaint on the basis that Rheubottom's work was exempt from the Act's overtime requirements under § 13(b)(10), 29 U.S. C. § 213(b)(10), which applies to

> "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trailers, trucks, farm implements, or aircraft if employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles to ultimate purchasers."

We are of opinion, however, that Rheubottom's appearance reconditioning work, which involves washing, cleaning, painting, and polishing used cars, and his various porter and errand duties do not qualify him as a mechanic under the definition of that term as considered here.

Rheubottom performs no work on the various mechanisms of the automobiles he reconditions, unless charging or changing a battery be so considered, nor does he utilize specialized tools. During trial, Rheubottom testified that "[i]f a car is not running and it takes more than a charge for the battery, I report it to the supervisor, and he in turn reports it to the mechanic, and the car is taken in for the proper maintenance to be done on it."

The Act itself does not define the word mechanic, but the House Report states that "[t]he term 'mechanic' is intended to include all employees doing mechanical work. . . ." H.R.Rep.No.1366, 89th Cong., 2d Sess. 43 (1966). Moreover, the Regulations promulgated pursuant to the 1966 Amendments offer the following guidelines:

> "As used in section 13(b)(10), a mechanic is any employee primarily engaged in doing mechanical work (such as get ready mechanics, automotive, truck, . . . used car reconditioning mechanics and wrecker mechanics) in the servicing of an automobile, trail-

er, truck . . . for its use and operation as such. . . . The term does not include employees primarily performing such nonmechanical work as washing, cleaning, painting, polishing, tire changing, installing seat covers, dispatching, lubricating, or other nonmechanical work. . . ." 29 CFR § 779.372(c)(3) (1973).

Thus, the major portion of duties performed by Rheubottom in his appearance reconditioning work are those specifically listed in the regulation as not being the work of a mechanic.

Here, the Secretary's position accords with the rule of construction that exemptions from the Act are to be narrowly construed. See, e. g., Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); Snell v. Quality Mobile Home Brokers, 424 F.2d 233 (4th Cir. 1970). Under the circumstances presented here, we are unable to find that Rheubottom's appearance reconditioning work, and related duties, qualify him as a mechanic within the meaning of the § 13(b)(10) exemption.

In both the briefs and during oral argument, there arose the distinct possibility that Rheubottom's business arrangement with the company might meet the premium rate provisions of § 7(e)(7) of the Fair Labor Standards Act, 29 U.S.C. § 207(e)(7). Section 7(e)(7) instructs that the "regular rate" at which an employee is employed shall be deemed to include all remuneration paid to the employee, but shall not be deemed to include—

> "extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the

time rate becomes $7.29 per hour. These computations were not passed upon by the district court since it found that, in any case, Rheu-

bottom was exempt from the Fair Labor Standards Act overtime requirements.

maximum workweek applicable to such employee under subsection (a) of this section), where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek."

If, in fact, the company's after-hours work plan with Rheubottom fulfills the conditions of this section, then the arrangement would meet the requirements of the Fair Labor Standards Act.

Consequently, we must vacate the decision of the district court and remand with instructions to determine the applicability of § 7(e)(7) of the Act to the facts of this case.

Vacated and remanded with instructions.