PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

THEADORE CARL WALTON, JR.,
        *Plaintiff-Appellant,*

v.

GREENBRIER FORD, INCORPORATED, t/a
Cavalier Ford,
        *Defendant-Appellee.*

No. 02-2432

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge.
(CA-02-55-2)

Argued: January 23, 2004

Decided: May 28, 2004

Before WIDENER, MOTZ, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge Gregory wrote the opinion, in
which Judge Widener and Judge Motz joined.

**COUNSEL**

**ARGUED:** Carl W. Isbrandtsen, Virginia Beach, Virginia, for Appel-
lant. Amy Jacqueline Inge, DURRETTE BRADSHAW, P.L.C., for
Appellee.

**OPINION**

GREGORY, Circuit Judge:

Theadore Carl Walton, Jr., appeals from a district court order granting summary judgment for his former employer, Greenbrier Ford, Inc., trading as "Cavalier Ford," on his Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, claim for overtime pay and his state law breach of contract claim. We find that the district court correctly determined that Walton fell within FLSA's automobile dealership workers exemption, 29 U.S.C. § 213(b)(10)(A), and hold Walton is not entitled to overtime pay. Additionally, Walton has failed to establish that he had an enforceable employment contract with Cavalier Ford, thus we conclude that he was an at-will employee, terminable subject to reasonable notice. We affirm the district court on both issues presented.

I.

Walton is a former federal employee whose work-related injuries forced him to discontinue his employment at Portsmouth Naval Hospital. Thereafter, the federal Office of Workers' Compensation Programs ("OWCP") helped Walton obtain vocational rehabilitation and training, and ultimately alternative employment at Cavalier Ford, an automobile dealership. On April 18, 2000, OWCP and Cavalier entered into an agreement, whereby OWCP would reimburse Cavalier for a percentage of Walton's wages. The agreement stated that Walton would work as a "Full-time Service Advisor beginning on April 13, 2000" and would be paid $40,000 per year. The agreement then detailed how much OWCP would reimburse Cavalier over a three-year period, and stated the re-employment subsidy would not exceed such period.

At the beginning of his employment, Walton and Cavalier Ford Service Director Jerry Banks signed a pay plan agreement stating that Walton would be paid $231.00 per week plus a commission of five percent of parts and labor gross computed individually on repair orders completed by Walton as a service advisor. The agreement guaranteed that Walton would receive $3333.33 per month ($40,000 per year), or his salary plus commission, whichever sum was greater.

Walton began his employment as a "Service Advisor" managing the Quick Lane Department, which was a new quick service operation at the dealership. Walton was to greet customers, listen to their concerns about their cars, write repair orders, follow-up on repairs, and keep customers informed about maintenance. Walton would also suggest to customers additional services that needed to be preformed and would prepare work orders. Walton worked in those capacities with Quick Lane from April 2000 to June 2001. In June 2001, he began training as a Service Advisor for all types of repair.[1] Walton testified that his duties were not "a whole lot . . . differen[t]" in this new capacity, and his job description did not change.

On August 8, 2001, Walton gave Cavalier a doctor's note stating he could not work more than eight hours per day. On August 16, 2001, Cavalier informed Walton that because he could no longer work the hours required of service advisors, the company would move him to a greeter position, an eight-hour per day job, paying eight dollars per hour. Walton declined this position and ceased working at Cavalier.

Walton then filed this lawsuit, asserting that under FLSA, he was owed compensation for 888.75 overtime hours, and that Cavalier Ford breached a three-year employment contract. The district court granted summary judgment for defendant on both claims. This appeal followed.

II.

We review the district court's grant of summary judgment de novo. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 766 (4th Cir. 2003). Summary judgment is warranted when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). We view the evidence in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

---

[1]Walton remained in this position until his employment terminated in August 2001.

III.

Walton argues that he is entitled to overtime pay under FLSA for approximately 888.75 hours worked. FLSA sets forth maximum work hour limitations, requiring that an employer pay overtime at a rate of one and one half times an employee's regular hourly rate for all hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1); *see also Monahan v. County of Chesterfield*, 95 F.3d 1263, 1267 (4th Cir. 1996). FLSA contains an exception from § 207's overtime pay requirement for salesmen and other employees working for automobile dealerships. 29 U.S.C. § 213(b)(10)(A).

Section 213(b)(10)(A) provides that § 207 does not apply to "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers . . . ." This exemption, like other FLSA exemptions, is to be narrowly construed. *See Auer v. Robbins*, 519 U.S. 452, 462 (1997). The determination of whether an employee falls within the scope of a FLSA exemption is ultimately a legal question. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 713-14 (1986).

The Fourth Circuit has not had the opportunity to consider whether "service advisors" or "service writers" like Walton fall within the exemption.[2] In holding that Walton fit the exemption, the district court primarily relied on *Brennan v. Deel Motors, Inc.*, 475 F.2d 1095 (5th Cir. 1973), the only circuit court authority on point. In *Deel*, the Fifth Circuit held that employees designated as "service writers," "service advisors," and "service salesmen" fell within the FLSA exemption. *Id.* at 1097. Factually, *Deel* is nearly on all-fours with Walton's case. The service individuals worked with customers to coordinate the sale of goods, services and mechanical skills provided by the dealership. *Id.* at 1096. The service employees referred vehicles to an appropriate department for repairs or additional equipment, and thereafter, the

---

[2]In *Brennan v. Bill Kirk's Volkswagen, Inc.*, 497 F.2d 892, 893-94 (4th Cir. 1974), we did, however, consider and reject an automobile dealer's claim that one of its employees, a "used car reconditioner," who "buff[ed], paint[ed], and wash[ed] used cars," was exempt under § 213(b)(10).

employees monitored the work and determined whether satisfactory work had been completed. *Id.* The individuals did not receive overtime, but were compensated by a weekly wage as well as a percentage commission on every service order they wrote. *Id.* In all respects, the service employees in *Deel* were substantially similarly situated to Walton.

The Fifth Circuit held that the advisors were exempt from FLSA's overtime requirement because they were

> functionally similar to the mechanics and parts-men who service the automobiles. All three work as an integrated unit, performing the services necessary for the maintenance of the customer's automobile. The mechanic and parts-man provide a specialized service with the service salesman coordinating these specialties. Each of these *service employees* receive a substantial part of their remuneration from commissions and therefore are more concerned with their total work product than with the hours performed.

*Id.* at 1097. The court further reasoned that it could not assume that Congress intended to treat employees with functionally similar positions differently, "especially when the exemption by its own terms refers to 'any salesman . . . engaged in selling or servicing automobiles . . .' This is exactly what a service salesman does." *Id.* at 1097-98 (quoting 29 U.S.C. § 213(b)(10)).[3] Similarly, in the instant case, the district court held that:

---

[3]Despite Walton's contentions, we could find no contrary authority to *Deel*, published or unpublished. In a series of unpublished decisions other courts have followed *Deel. See Yenney v. Cass County Motors*, No. 76-0-294, 1977 WL 1678, at *2-3 (D. Neb. Feb. 8, 1977) (holding "Parts and Service Manager" with same job functions as those considered in *Deel* who received commissions in addition to salary fit FLSA exemption); *Brennan v. Import Volkswagen, Inc.*, No. W-4982, 1975 WL 1248, at *1-2 (D. Kan. Oct. 21, 1975) (holding employees known as "service advisers," "service writers," and "service salesmen" fit the exemption even where their "primary source of income" was their weekly salary); *Brennan v. North Bros. Ford, Inc.*, No. 40344, 1975 WL 1074, at *2-3 (E.D. Mich. Apr. 17, 1975) (holding service salesman who received 3/4

> [A] service writer/advisor [in Walton's position], as a matter
> of law, is functionally similar to a salesman, partsman or
> mechanic or service salesman as defined in *Deel Motors*
> [citation] for purposes of 29 U.S.C. § 213(b)(10). Accord-
> ingly, the Court concludes as a matter of law, that Walton's
> position as a service writer/advisor is exempt from the
> FLSA premium overtime pay requirement.

Dist. Ct. slip op. at 17.

Walton, however, argues that the district court erred in following
*Deel* and holding that he was an exempt employee. Walton contends
that *Deel* is contrary to the Secretary of Labor's regulations on FLSA.
The FLSA regulations provide:

> Employees variously described as service manager, service
> writer, service advisor, or service salesmen who are not
> themselves primarily engaged[4] in the work of a salesman,
> partsman, or mechanic . . . are not exempt under [29 U.S.C.
> § 213(b)(10)]. This is true despite the fact that such an
> employee's principal function may be diagnosing the
> mechanical condition of vehicles brought in for repair, writ-
> ing up work orders for repairs authorized by the customer,
> assigning the work to various employees and directing and
> checking on the work of mechanics.

29 C.F.R. § 779.372(c)(4). Walton argues that under the regulation he
was not a "salesman" because the regulations define that term as "an

---

of one percent to 1 1/4 percent commission in addition to salary and sold
parts and services to dealership customers fit the exemption), *aff'd sub
nom.*, *Dunlop v. North Bros. Ford, Inc.*, 529 F.2d 524 (6th Cir. 1976);
*see also Viart v. Bull Motors, Inc.*, 149 F. Supp. 2d 1346, 1350-51 (S.D.
Fla. 2001) (quoting *Deel* with approval); *Dayton v. Coral Oldsmobile,
Inc.*, 684 F. Supp. 290, 292 (S.D. Fla. 1988) (same).

[4]The regulation explains that "primarily engaged" means "the major
part or over 50 percent of the salesman's, partsman's, or mechanic's time
must be spent in selling or servicing the enumerated vehicles." *Id.*
§ 779.372(d).

employee who is employed for the purpose of and is primarily engaged in making sales or obtaining orders or contracts for sale of the vehicles." *Id.* § 779.372(c)(1). Walton asserts that rather than properly applying that definition, the Fifth Circuit in *Deel* and district court in this case erroneously "created and added a new category of employees . . . called 'service salesmen'" under the FLSA exemption.

We find Walton's argument unavailing and conclude that the district court created no such new category of employees. While we decline to apply the "functionally similar" analysis in which both the Fifth Circuit and the district court engaged because their "functionally similar" inquiry cannot be squared with FLSA's plain statutory and regulatory language, we conclude that the Secretary's definition of "salesman" is flatly contrary to the statutory text, and Walton's job duties demonstrate that he was an overtime-exempt employee under FLSA.

In interpreting the validity of agency regulations, our standard of review depends upon whether such regulation is legislative or interpretive. *Pelissero v. Thompson*, 170 F.3d 442, 446 (4th Cir. 1999). Legislative regulations are those in which "Congress has explicitly left a gap for the agency to fill, [thus] there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984). We give such regulations "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844. An interpretive regulation serves to "clarify ambiguous terms found in the statute or explain how a provision operates." *Pelissero*, 170 F.3d at 446. We accord those regulations "considerable weight," *Chevron*, 467 U.S. at 844, and will uphold them "if they implement the congressional mandate in a reasonable manner." *Pelissero*, 170 F.3d at 446 (citing *Nat'l Muffler Dealers Ass'n, Inc. v. United States*, 440 U.S. 472, 476 (1979)); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (recognizing as a general rule, the Department of Labor's interpretative regulations under FLSA "constitute a body of experience and informed judgment to which courts . . . may properly resort for guidance").

Here, we find that 29 C.F.R. § 779.372(c)(1) is interpretative as it construes the statutory term "salesman." We hold, however, that the

Secretary's interpretation of that term is unreasonable, as it is an impermissibly restrictive construction of the statute. FLSA itself exempts any salesman "primarily engaged in selling *or servicing automobiles*" from the overtime requirements. 29 U.S.C. § 213(b)(10)(A) (emphasis added). However, the regulation conflicts with FLSA's statutory mandate in that it restricts the definition of "salesman" to those employees "primarily engaged in making sales or obtaining orders or contracts for *sales of the vehicles*." 29 C.F.R. § 779.372(c)(1) (emphasis added). Because that restrictive regulatory definition of "salesman" unreasonably implements the congressional mandate, we reject the Secretary's interpretation in 29 C.F.R. § 779.372(c)(1).

Having rejected the Secretary's interpretation of "salesman," we must determine whether Walton comes within the statutory exemption as "any salesman . . . primarily engaged in . . . servicing automobiles." 29 U.S.C. § 213(b)(10)(A). The district court recognized that the undisputed facts showed that Walton promoted and attempted to sell goods and services provided by Cavalier, openly solicited business by telephone, and his hours were irregular, based on the needs of Cavalier's customers. Indeed, the undisputed facts of Walton's employment demonstrate that he was the dealer's "first line . . . service sales representative," and his job required the "satisfaction of customer and vehicle related problems, [and] meeting pre-determined service sales objectives." Dist. Ct. slip op. at 12 (J.A. 604) (emphasis removed). Specifically, Walton was required to interact with customers to determine their reasons for seeking service, and based on such interactions, he was to "[o]ffer logical diagnostic services or repairs to satisfy customer's concerns . . . .[,] [p]rovide accurate estimates for all the services or repairs recommended . . . . [and] [s]ell the proper repairs and/or services responsive to customer's perceived needs." *Id.* (emphasis removed) (citation omitted). Despite these facts, Walton largely asks us to find that he was a non-exempt employee by placing great weight on his job title, rather than the duties he actually performed under that title. *Cf. Ale v. Tenn. Valley Auth.*, 269 F.3d 680, 688-89 (6th Cir. 2001) (stating "courts must focus on the actual activities of the employee in order [to] determine whether or not he is exempt from FLSA's overtime regulations"). However, based on the above-detailed facts in this case regarding Walton's duties, we hold that Walton was indeed a salesman under the statute.

Finally, we conclude that as a salesman, Walton was primarily engaged in servicing automobiles. The facts make clear that Walton was an integral part of the dealership's servicing of automobiles. For example, the district court recognized that Walton had a "key role" in the dealership's service operations, and that of Walton's twelve specific job responsibilities, "at least half of them are service and sales related functions." Dist. Ct. slip op. at 12-13. *See also id.* at 13 ("[A] service writer/advisor wears many hats, and during any work day he is part salesman, partsman and mechanic."). Based on those uncontested facts, the court held that Walton's position as a service writer/advisor was exempt from the FLSA premium overtime pay requirement. *See* Dist. Ct. slip op. at 17. Given the absence of genuine issues of material fact, we hold that the district court correctly determined, as a matter of law, that Walton's job activities exempted him from FLSA's overtime pay provisions. *See Icicle Seafoods*, 475 U.S. at 714 (stating "[t]he question of how the [employees] spent their working time . . . is a question of fact. The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law . . . ."). Accordingly, we affirm the district court's grant of summary judgment on Walton's FLSA claim because he was, for the purposes of 29 U.S.C. § 213(10)(A), a "salesman, partsman, or mechanic primarily engaged in . . . servicing automobiles."

IV.

We now turn to Walton's arguments that the district court erred in holding that Walton did not have an enforceable three-year employment contract with Cavalier. Virginia remains an employment-at-will jurisdiction. *Bailey v. Scott-Gallagher, Inc.*, 480 S.E.2d 502, 503-04 (Va. 1997). The employment relationship is presumed to be terminable by either party given reasonable notice. *Id.* Furthermore, contracts that cannot be performed within one year and those terminable only for cause must comply with the statute of frauds. *Falls v. Va. State Bar*, 397 S.E.2d 671, 672-73 (Va. 1990).

First, Walton argues that the April 18, 2000 agreement between OWCP and Cavalier constitutes an employment contract. The district court correctly determined the April 18, 2000 letter neither offers nor purports to create a three-year employment contract. The first para-

graph explicitly states: "This letter constitutes the agreement between Cavalier Ford and the U.S. Department of Labor, [OWCP], explaining the terms and procedures whereby OWCP will reimburse you for wages paid to [Walton]." Nowhere is a promise of employment extended to Walton for any definite term. There is no evidence suggesting that the agreement was intended as an employment agreement.

Next, Walton attempts to rely on his employee policy manual as establishing a definite term of employment. The manual states that Cavalier employees are "assured of steady employment as long as [they] adhere to [Cavalier's] policies and personnel standards, and as long as [they] are producing at a satisfactory level (barring of course, economic or other conditions over which we have no control." This provision falls far from providing a definite term of employment, and the proviso evidences that this is an employment at-will situation. Moreover, the manual states: "This manual does not impose contractual obligations upon either the company or its employees." A clear disclaimer in an employee manual effectively negates any other provisions or attempts to rebut the at-will presumption. *Nguyen v. CNA Corp.*, 44 F.3d 234, 239 (4th Cir. 1995) (applying Virginia law); *accord Graham v. Cent. Fidelity Bank*, 428 S.E.2d 916, 918 (Va. 1993). Finally, Walton attempts to rely on alleged oral promises that Cavalier made regarding a three-year employment contract. The district court correctly rejected Walton's argument based on the Virginia statute of frauds. *See* Va. Code § 11-2.[5]

V.

For the foregoing reasons, we affirm the district court's entry of summary judgment for Cavalier Ford.

*AFFIRMED*

---

[5]Indeed, Walton concedes the statute of frauds may serve as a bar, *see* Appellant's Br. at 25, before advancing several unavailing arguments regarding how the oral agreement is supported by the above-discussed written "memorandums" of the three-year agreement.