**GLENDALE INTERNATIONAL CORP., Plaintiff,**

v.

**U.S. PATENT & TRADEMARK OFFICE, Defendant.**

**No. 1:04CV1082.**

United States District Court,
E.D. Virginia,
Alexandria Division.

June 20, 2005.

Bruce Alan Tassan, Tassan & Hardison, Arlington, VA, for Plaintiff.

Dennis E. Szybala, Richard Parker, United States Attorney's Office, Alexandria, VA, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This case involves review of the Trademark Trial and Appeal Board's ("TTAB's") determination that plaintiff's trademark "TITANIUM" is deceptively misdescriptive of its goods and therefore non-registrable on the principal trademark register. At issue on cross-motions for summary judgment is the question whether the TTAB's determination is supported by substantial evidence.

### I.[1]

Plaintiff Glendale International Corp. is a Canadian corporation that markets recreational vehicles under the trademark "TITANIUM." In November 2000, plaintiff began its multi-year quest to register the TITANIUM mark in the United States by filing an intent-to-use application[2] with the U.S. Patent & Trademark Office ("PTO"). In its application, plaintiff identified the goods that would bear the TITANIUM mark only as "recreational vehicles." Record at 162. Approximately five months later, in April 2001, the PTO Examining Attorney reviewing plaintiff's application refused registration of the TITANIUM mark on the ground that it was "merely descriptive" of plaintiff's recreational vehicles and therefore non-registrable pursuant to § 2(e)(1) of the Trademark Act.[3] As part of her refusal letter, the Examining Attorney attached a definition of titanium taken from *The American Heritage Dictionary*—"[a] strong, low-density, highly corrosion-resistant, lustrous white metallic element that . . . is used to alloy

---

1. The facts recited here are undisputed and derived from the administrative record before the TTAB.

2. The Trademark Act permits federal registration of a trademark on the basis of an intention to use the mark in commerce; actual use of the mark prior to registration is not required. *See* 15 U.S.C. § 1051(b)(1) (2005). Here, however, the record reflects that plaintiff has used the TITANIUM mark in commerce. *See* Record at 65.

3. 15 U.S.C. § 1052(e)(1) (2005).

aircraft metals for low weight, strength, and high-temperature stability"—and explained that "[a]bsent any limitations in the identification of goods, it is presumed that the applicant's recreational vehicles are made wholly or in part of titanium," noting in addition a 1996 news article from *Tooling & Production* magazine that mentions the use of titanium in recreational vehicles. Record at 155, 157. The Examining Attorney also stated, however, that the refusal was not a final action, and invited plaintiff to submit additional evidence and arguments bearing on registrability, including a more detailed description of the goods in issue.

In June 2001, in response to the refusal, plaintiff submitted an amendment to its application clarifying that "applicant's product does not contain any titanium." Record at 142. The amendment also added considerably greater detail to the identification of goods, describing them as:

> Recreational vehicles, namely, a vehicular type unit primarily designed as temporary living quarters for recreational camping, travel, or seasonal use that either has its own motive power or is mounted on, or towed by, another vehicle, namely, camping trailers, fifth wheel trailers, motor homes, travel trailers, and truck campers ....

Record at 141. Based on these changes, plaintiff contended that the TITANIUM mark was not "merely descriptive" of its goods, and asked that the refusal of registration be withdrawn. In an apparent attempt to preempt refusal on different grounds, plaintiff also contended that the TITANIUM mark was not "[deceptively] misdescriptive" of its goods,[4] explaining that the mark was unlikely to cause consumers to believe mistakenly that plaintiff's vehicles were made of titanium. To support this point, plaintiff quoted from

the dictionary definition cited by the Examining Attorney, suggesting that titanium "is a very expensive metal which is not likely to be used in vehicles of the type identified by [a]pplicant's mark." Record at 142. As a final point, plaintiff noted that the principal trademark register contained many registered trademarks for vehicles that incorporate the words "GOLD" or "SILVER," and encouraged the PTO "to practice consistent and uniform policies" with respect to "metal marks." Record at 142–43.

Based on this response, the Examining Attorney withdrew the initial descriptiveness-based refusal and issued in its place a refusal on grounds of deceptive misdescriptiveness. Applying the two-part test for deceptive misdescriptiveness set forth in *In re Quady Winery, Inc.*, 221 USPQ 1213, 1214 (Trademark Tr. & App.Bd. 1984), the Examining Attorney found (i) that the TITANIUM mark misdescribed plaintiff's goods, which did not actually contain titanium, and (ii) that—contrary to plaintiff's claims—consumers were likely to believe the misdescription and incorrectly infer that plaintiff's goods were made, at least in part, of titanium. In support of the latter conclusion, the Examining Attorney again cited the *Tooling & Production* article, quoting its comment that:

> Aluminum-alloy products, such as titanium, are finding their way into automobiles and recreational vehicles. Not only do these materials make vehicles lighter, ... but they also make them more structurally sound.

Record at 126. The Examining Attorney found this comment particularly significant in light of the fact that plaintiff's advertising brochures emphasized that TITANIUM recreational vehicles were composed

---

**4.** Like descriptive marks, marks that are "deceptively misdescriptive" are not eligible for federal registration. *See* 15 U.S.C. § 1052(e)(1) (2005).

of "**LITE WEIGHT composite materials** ... which provide **significantly reduced overall Weight**." Record at 53, 126. Additionally, the Examining Attorney noted that a NEXIS search had discovered thirteen other newspaper and magazine articles discussing the use of titanium in the automotive industry. Excerpts from the articles, which the Examining Attorney attached to her refusal letter, included such quotes as:

(i) "with titanium, we are talking about comparatively exotic vehicles, not the run-of-the road sorts of things that most of use roll in,"

(ii) "[i]n a typical American-built five- or six-passenger family vehicle ... a total savings of 20 to 30 pounds would be achieved just by converting the four coil springs to titanium,"

(iii) "[f]or years titanium has been used in racing cars, ... but now it is creeping into volume-produced cars,"

(iv) "stainless [steel] could face competition from lightweight but super-expensive titanium," and

(v) "Ford has been able to reduce the vehicle's mass drastically by substituting for steel such lightweight materials as ... titanium."

Record at 130–37. Although the majority of the articles came from trade publications like *Automotive Manufacturing & Production* and *American Metal Market,* some had appeared in more mainstream periodicals, including *The Indianapolis Star, Seattle Weekly,* and *The Plain Dealer.* Based principally on the articles and plaintiff's description of its own product, the Examining Attorney concluded that "consumers are likely to believe that [plaintiff's] goods contain titanium," and

thus found the TITANIUM mark deceptively misdescriptive. Record at 126.

In March 2002, plaintiff responded to the second refusal by again amending its application, this time eliminating the reference to vehicles having their "own motive power" in the description of its goods.[5] As plaintiff explained, its product line was limited to non-motorized recreational vehicles, *e.g.,* trailers, and thus the inclusion of motorized vehicles in the previous identification of goods was an error. Addressing the substance of the second refusal, plaintiff explained that while it "may be true" that some motorized recreational vehicles contained titanium components, there was "no evidence that anyone, anywhere is making products of applicant's type containing titanium." Record at 122. With respect to the Examining Attorney's evidence, plaintiff contended that apart from the *Tooling & Production* article, "[a]ll the other articles cited by the Examiner relate to prototype vehicles, super exotic vehicles, vehicles with motors, or exotic solar vehicles," and thus there was "no evidence that anyone would believe that a non-motorized truck cabin or a trailer would be made of such an expensive metal." Record at 122. Given this, plaintiff argued, its proposed mark was not deceptively misdescriptive of its goods, and the refusal should be withdrawn.

Two months later, in May 2002, the Examining Attorney issued a final refusal of plaintiff's application maintaining her previous finding of deceptive misdescriptiveness. In response to the arguments set forth in plaintiff's new amendment, the Examining Attorney attached a half-dozen new articles from *The Denver Post, The*

---

**5.** The new amendment identified the goods to which the TITANIUM mark would be applied as "recreational vehicles, namely, a vehicular type unit primarily designed as temporary living quarters for recreational camping, trav-

el, or seasonal use that is mounted on, or towed by another vehicle, namely, camping trailers, fifth wheel trailers, motor homes, travel trailers, and truck campers ...." Record at 121.

*San Antonio Express–News, American Metal Market,* and *American Machinist,* containing, *inter alia,* the following quotes:

(i) " 'The cost of titanium is far too expensive for the Big Three (automakers) to begin accepting the material on all of the automotive models, but we see tremendous opportunities within the luxury and sporting vehicles,' Olin said."

(ii) "The exhaust system is a first for the auto industry in a mass-market vehicle: It uses titanium in the twin mufflers and tailpipes."

(iii) "Timet's more optimistic assessment is that the formation of new division would allow it [to] respond to the emerging market for titanium in vehicles in North America, Europe, and Japan."

(iv) "In street-vehicle applications, titanium is used for engine valves, connecting rods, wheel-rim screws, exhaust systems, and suspension springs."

Record at 103–05. On the basis of these and other, similar excerpts, the Examining Attorney reasoned that "consumers . . . have seen the increasing use of titanium and titanium components in . . . different types of vehicles," and thus that "[i]t would not be a leap in logic for consumers to assume that recreational vehicles 'that [are] mounted on or towed by another vehicle' contain titanium components." Record at 92. The Examining Attorney therefore found it "immaterial" that plaintiff's recreational vehicles were non-motorized, but noted that the description of plaintiff's goods included "motor homes," which are classified within the industry as "motorized" rather than "towable" vehicles. Record at 92 and n.2. The Examining Attorney further noted that although plaintiff's "camping trailers generally are not 'high end' items," recreational vehicles

can be quite costly, and thus are "precisely the types of vehicles consumers would believe contain titanium components." Record at 92. The Examining Attorney closed by advising plaintiff that her determination regarding the deceptive misdescriptiveness of the TITANIUM mark was final.

In September 2002, plaintiff requested reconsideration of the final refusal by filing yet another amendment to its registration application, this time excluding "motor homes" from its identification of goods, but making no additional arguments against deceptive misdescriptiveness. The Examining Attorney accepted the amendment, but denied the request to withdraw the refusal, attaching excerpts from seven new articles from various publications, including *The Washington Times* and *The Atlanta Journal & Constitution,* mentioning the use of titanium in the automotive industry.

Plaintiff thereafter appealed the refusal to the TTAB, which in April 2004 affirmed the Examining Attorney's determination that the TITANIUM mark was deceptively misdescriptive and therefore non-registrable. Applying the same two-part test for deceptive misdescriptiveness that the Examining Attorney applied,[6] the TTAB began by noting that plaintiff did not dispute that the TITANIUM mark misdescribed its goods, and thus deemed the first prong satisfied. Turning to the second prong— whether consumers were likely to believe the misdescription—the TTAB found that the articles cited by the Examining Attorney, while "not persuasive evidence of routine current use of titanium in recreational vehicles," indicated (i) "that titanium can be used in recreational vehicles," (ii) "that there is an advantage to using titanium in recreational vehicles because it is lighter in weight," and (iii) that "titanium is a selling feature." Record at 31. From these findings, the TTAB concluded that "consumers familiar with the benefits of titanium

6. *See Quady Winery,* 221 USPQ at 1214.

would conclude ... that [plaintiff's] vehicles contain titanium," and that "[t]his belief would be reinforced by applicant's own promotional brochure, which emphasizes the advanced composite materials used in its products and the lighter weight of its materials." Record at 31–32. In response to plaintiff's contention that the costliness of its vehicles would ensure that only sophisticated—and therefore un-deceived—consumers would purchase them, the TTAB reasoned that "the fact that applicant's TITANIUM recreational vehicles are expensive is more likely, rather than less likely, to cause consumers to believe that such products do, in fact, contain titanium." Record at 33. Finally, the TTAB rejected plaintiff's argument that the registration by other vehicle manufacturers of marks containing the words "GOLD" or "SILVER" was somehow relevant to the registrability of the TITANIUM mark, observing, *inter alia*, that "the term 'gold' has a laudatory significance that 'titanium' does not have." Record at 34.

In June 2004, two months after the TTAB affirmed the refusal to register plaintiff's mark, plaintiff brought this action in the U.S. District Court for the District of Columbia pursuant to 15 U.S.C. § 1071(b)(1), which provides that in lieu of an appeal to the U.S. Court of Appeals for the Federal Circuit, a party dissatisfied with a TTAB decision may challenge the

decision through a civil action against the PTO in federal district court.[7] In its complaint, plaintiff requests a declaration that the TITANIUM mark is not deceptively misdescriptive of its goods and that the TTAB erred in sustaining the Examining Attorney's refusal of registration on that ground. The case was subsequently transferred to this district on the PTO's unopposed motion to transfer venue.[8] Thereafter, the parties agreed in their Joint Report and Discovery Plan that the case should be decided on dispositive motions, without a trial, and an Order issued establishing that the case would be decided solely on basis of the administrative record, without the introduction of additional evidence.[9] The parties thereafter filed cross-motions for summary judgment. Because there are no material facts in dispute, the matter is ripe for disposition.

## II.

■ In the typical case, the district court's task at the summary judgment stage is "to determine whether there is a genuine issue for trial" after reviewing the parties' evidence in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Walton v. Greenbrier Ford*, 370 F.3d 446, 449 (4th Cir.2004). Here, however, this familiar formulation inaccurately

7. The principal difference between challenging a TTAB decision through an appeal to the Federal Circuit and through a civil action in federal district court is that the latter route affords a party the opportunity to introduce new evidence in support of its claims. *See CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673 (7th Cir.2001).

8. *See Glendale Int'l Corp. v. United States Patent & Trademark Office*, Civil Action No. 04–0967–CKK (D.D.C. Aug. 31, 2004) (Order). It is unclear from the record whether the matter was transferred pursuant to 28 U.S.C. § 1404(a) or § 1406(a). The PTO asserted

both grounds in its motion to transfer, and the transferring order does not specify the ground on which the district court relied.

9. *See Glendale Int'l Corp. v. United States Patent & Trademark Office*, Case No. 1:04cv1082 (E.D.Va. Jan. 28, 2005) (Order). This Order issued pursuant to FED. R. CIV. P. 37, as a result of plaintiff's failure to comply with its discovery obligations. Ordinarily, however, a party is permitted to submit evidence outside of the administrative record when challenging a TTAB decision pursuant to 15 U.S.C. § 1071(b). *See supra* note 7.

describes the judicial task at hand. In cases brought pursuant to 15 U.S.C. § 1071(b), the district court "sits in a dual capacity," serving on one hand as the finder of fact with respect to new evidence presented by the parties, and on the other as an appellate reviewer of facts found by the TTAB. *See CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 674 (7th Cir. 2001); *Skippy, Inc. v. Lipton Invs., Inc.*, 345 F.Supp.2d 585, 586 (E.D.Va.2002). Here, as previously noted, no new evidence has been introduced, and the parties have submitted the matter for decision solely on the basis of the administrative record. In the circumstances, therefore, no fact-finding in required and the judicial function in this case is limited to the exercise of the appellate review.

 In this respect, decisions of the TTAB are reviewed *de novo* with respect to conclusions of law and for "substantial evidence" with respect to findings of fact. *See In re Pacer Tech.*, 338 F.3d 1348, 1349 (Fed.Cir.2003); *On–Line Careline, Inc. v. America Online, Inc.*, 229 F.3d 1080, 1085 (Fed.Cir.2000); *see also CAE*, 267 F.3d at 676; *Skippy*, 345 F.Supp.2d at 587. Substantial evidence "is more than a mere scintilla" of evidence, and requires "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *See Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (quoted in *Pacer*, 338 F.3d at 1349). It is also helpful to note that the substantial evidence standard is "somewhat" more deferential than the "clearly erroneous" standard normally used to review the factual findings of a

lower court, although courts, including the Supreme Court, have expressed difficulty discerning a practical distinction between the two standards. *See Dickinson v. Zurko*, 527 U.S. 150, 162–63, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) ("we have failed to uncover a single instance in which a reviewing court conceded that use of one standard rather than the other would in fact have produced a different outcome"); *CAE*, 267 F.3d at 676 and n. 10. Because the question whether a trademark is deceptively misdescriptive of particular goods is a question of fact, the TTAB's finding that the TITANIUM mark is deceptively misdescriptive of plaintiff's goods will be reviewed to determine whether it is supported by substantial evidence. *See In re Compagnie Generale Maritime*, 993 F.2d 841, 845 (Fed.Cir.1993) ("Whether a mark is primarily geographically descriptive or deceptively misdescriptive is a question of fact.").

 As both the Examining Attorney and the TTAB correctly noted, the test for deceptive misdescriptiveness has two prongs: (i) whether the mark misdescribes the goods to which it applies; and (ii) whether consumers are likely to believe the misdescription. *See In re Automatic Radio Mfg. Co., Inc.*, 56 C.C.P.A. 817, 404 F.2d 1391, 1396 (Cust. & Pat. App.1969); *Gold Seal Co. v. Weeks*, 129 F.Supp. 928, 935 (D.D.C.1955); *In re Phillips–Van Heusen Corp.*, 63 USPQ2d 1047 (Trademark Tr. & App.Bd.2002); *Quady Winery*, 221 USPQ at 1214. Importantly, the misdescription need not be material to the consumer's decision to purchase the goods,[10] nor result in consumer confusion

---

10. *See Gold Seal*, 129 F.Supp. at 935; *In re Shapely, Inc.*, 231 USPQ 72, 1986 WL 83693 (Trademark Tr. & App.Bd.1986); *In re Perfect Fit Indus., Inc.* 223 USPQ 92, 1984 WL 62811 (Trademark Tr. & App.Bd.1984); 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 11:58 (4th ed.2005). Where the misdescription *is* a material factor in the

consumer's purchasing decision, the mark in issue is not merely "deceptively misdescriptive," but "deceptive," and therefore non-registrable under § 2(a), rather than § 2(e)(1), of the Trademark Act. *See* 15 U.S.C. § 1052(a) (2005). The difference in effect between a finding of "deceptive misdescriptiveness" and a finding of "deceptiveness" is that a mark

as to the source of the goods.[11] Here, plaintiff concedes that the TITANIUM mark misdescribes its recreational vehicles, and thus only the second prong is in issue. Thus, the question presented is whether the administrative record reflects substantial evidence that consumers will likely believe that TITANIUM recreational vehicles are, in fact, made of titanium.

When evaluating the evidence set forth by the PTO in an *ex parte* trademark prosecution case, it is incumbent on courts to be "[m]indful that the PTO has limited resources for acquiring evidence," and "cannot ... be expected to conduct a survey of the marketplace or obtain consumer affidavits" as a means of measuring popular perceptions of a particular trademark. *In re Budge Mfg. Co., Inc.*, 857 F.2d 773, 775 (Fed.Cir.1988); *accord In re Loew's Theatres, Inc.*, 769 F.2d 764, 768 (Fed.Cir. 1985) ("The practicalities of the limited resources available to the PTO are routinely taken into account in reviewing its administrative action."). Instead, the PTO must rely, as it did here, on sources of publicly-available information likely to reflect such perceptions and, of course, common sense. The record reflects that when confronted with the TITANIUM mark, the Examining Attorney and the TTAB turned first to *The American Heritage Dictionary*, which defines "titanium" as a "metallic element" that is "used to alloy aircraft metals" and is characterized by its "low weight, strength, and high-temperature stability." Because "titanium" is not a particularly esoteric word, this definition, by any reasonable measure, suffices to establish a common baseline understanding of titanium as a metal with industrial uses.

The Examining Attorney, however, did not end her analysis with the dictionary definition, but instead proceeded, over the course nearly two years, to assemble a collection of more than twenty-five news articles, the earliest of which appeared in 1996, that discuss, or at least mention, the use or potential use of titanium in the automotive industry. The record reflects, in fact, that the idea of using titanium in automobiles was regularly in circulation, perhaps even growing in popularity, during the time that plaintiff's application was pending. While the bulk of these articles appeared in industry and trade publications, eight, by plaintiff's own count, appeared in broader-circulation, popular-audience periodicals. From these articles, the Examining Attorney sensibly reasoned that because consumers were regularly exposed to the idea of titanium in different types of vehicles, it would not be "a leap in logic" for consumers to assume that a towed or mounted vehicle like plaintiff's might also be made with titanium, particularly when it is advertised—in boldface no less—as possessing one of titanium's principal characteristics, namely light weight.

Faced with this *prima facie* case against registrability, plaintiff had the burden to come forward with evidence indicating a lack of consumer awareness of the industrial uses of titanium. *See Budge*, 857 F.2d at 776. It produced none. Instead, plaintiff now offers a number of arguments against the sufficiency of the PTO's administrative record, all of which are meritless. Contrary to plaintiff's claims, it is irrelevant whether or not any non-motorized recreational vehicles are, in

that is merely deceptively misdescriptive may ultimately be registered if the applicant can prove that the mark possesses "acquired distinctiveness," *i.e.*, an association in the consumer's mind with a particular product source. *See* 15 U.S.C. § 1052(f) (2005). Not so for marks that are deceptive.

11. *See Quady Winery*, 221 USPQ at 1214 (observing, in an appeal from a refusal of registration on grounds of deceptive misdescriptiveness, that "the issue here is not likelihood of confusion").

fact, made with titanium. The proper test for the likelihood of consumer belief in a misdescription is plausibility, not reality. *See Humanetics Corp. v. Neways, Inc.,* 2004 WL 763935, 2004 TTAB LEXIS 215 at *22 (March 31, 2004). For the same reason, it is also irrelevant that only one of the articles cited by the Examining Attorney referred specifically to the use of titanium in "recreational vehicles," and that some of the articles—by no means all—referred to the potential rather than the actual use of titanium in vehicles. Finally, it is irrelevant that plaintiff's recreational vehicles are not significantly more expensive than other, comparable recreational vehicles, as plaintiff's trademark is deceptively misdescriptive without regard to price, and it is irrelevant the price is not an additional exacerbating factor in the misdescription.

In sum, the record reflects that the TTAB relied on substantial evidence of consumer familiarity with the use of titanium in the automotive industry when it found that consumers would likely believe that recreational vehicles bearing the TITANIUM mark were, in fact, made from titanium. Accordingly, the TTAB's conclusion that the TITANIUM mark is deceptively misdescriptive of plaintiff's goods is supported by substantial evidence. For these reasons, plaintiff's claim that registration of the TITANIUM mark was wrongly refused must fail.

### III.

For the foregoing reasons, defendant's motion for summary judgment must be granted, and plaintiff's motion for summary judgment must be denied.

An appropriate Order will issue.