**THIS DISPOSITION
IS CITABLE
AS PRECEDENT OF
THE TTAB**

Mailed:
6 April 2006
AD

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Moti Shniberg
_____

Serial No. 78083495
_____

Moti Shniberg, pro se.

Scott Baldwin, Trademark Examining Attorney, Law Office 112
(Janice O'Lear, Managing Attorney).
_____

Before Seeherman, Quinn, and Drost, Administrative
Trademark Judges.

Opinion by Drost, Administrative Trademark Judge:

On September 11, 2001,[1] applicant Moti Shniberg filed
an intent-to-use application to register on the Principal
Register the following mark, in standard character or typed
form:

**SEPTEMBER 11, 2001**

---

[1] USPTO records indicate that the application was transmitted
electronically at "17:37:56 EDT" on September 11, 2001.
Therefore, the application was filed after events of the morning
of September 11th.

The goods and services in the application were ultimately amended to read as follows:

Books in the field of history; series of fictional books (Class 16) and

Entertainment in the nature of ongoing radio programs in the field of news; entertainment in the nature of ongoing television programs in the field of drama; entertainment in the nature of television news shows; entertainment in the nature of theater productions; entertainment in the nature of visual and audio performances, and musical variety, news and comedy shows; entertainment namely, production of operas, television shows, plays, radio programs; entertainment services, namely providing a radio program in the field of news and historical events; entertainment, namely, television news shows (Class 41).

The examining attorney[2] has refused to register the mark on the ground that the mark is deceptively misdescriptive under Section 2(e)(1) of the Trademark Act. 15 U.S.C. 1052(e)(1).[3]  Applicant, in his response to the

---

[2] The current examining attorney was not the original examining attorney in the case.

[3] The examining attorney also advised applicant (Brief at 4) that:

The examining attorney hereby withdraws the refusal under Sections 1, 2, 3, and 45 of the Trademark Act.  However, the applicant is advised that, upon consideration of an amendment to allege use or statement of use, the refusal may be reinstated on the grounds that the mark does not function as a trademark or service mark.  In addition, based solely upon the assertions made by the applicant for the record that none of the applicant's books or entertainment services will in any way cover the events of September 11, 2001, the examining attorney withdraws the refusal under Section 2(e)(1) as merely descriptive.  The discovery of any information that contradicts such assertions will result in the reinstatement of the aforementioned refusal.

examining attorney's requirement for information dated June

26, 2003 at 2, provided the following information:

> None of applicant's books [is] on the subject of the
> events of September 11, 2001.

> None of applicant's entertainment services will in any
> way cover the events of September 11, 2001.

The examining attorney submitted evidence about the

terrorist attacks of September 11, 2001, and also evidence

about books and other publications about the events of

September 11, 2001. The examining attorney concluded that,

inasmuch as applicant's books and entertainment services do

not concern the events of September 11, 2001, the mark is

deceptively misdescriptive.

Applicant responds (Brief at 9-11, footnotes omitted)

to the deceptively misdescriptive refusal as follows:

> The Examining Attorney has refused the registration of
> the mark on a cumulative basis that the mark is both
> descriptive and misdescriptive. That is to say, the
> Examining Attorney did not refuse registration because
> the mark in question is descriptive or, in the
> alternative, if the mark is not descriptive, that it
> is deceptively misdescriptive. Rather, as stated
> above, the Examining Attorney refused registration
> because he ruled that the mark is at the same time
> both descriptive and deceptively misdescriptive.

> That is not permissible, even more, it is not
> logically tenable to allege that the mark is both

---

Therefore, the only issue before us is the issue of whether the
applied-for term is deceptively misdescriptive. In considering
this issue, however, while we have treated "SEPTEMBER 11, 2001"
as a mark for the identified goods and services, our comments
should not be taken as a finding that the term functions as a
mark.

3

descriptive and deceptively misdescriptive. That is because each of these positions is the diametrically opposed counterpoint of the other. They are mutually exclusive.

The utter untenability of raising both grounds on a cumulative basis is a bedrock principle of logic and was recognized by Aristotle over 2000 years ago, who described it as the principle of non-contradiction thusly:

"Evidently then such a principle is the most certain of all; which principle this is, let us proceed to say. It is that the same attribute cannot at the same time belong and not belong to the same subject in the same respect."…

The application of this bedrock principle of logic to the instant case is clear and direct. A mark cannot both describe and misdescribe. To so claim that a mark is both descriptive and deceptively misdescriptive is to commit a fatal error in logic. Because such a position by the Examiner is fundamentally illogical, the Applicant is not able to formulate a reply with respect to these grounds for refusal. In order for the applicant to reply to these two grounds of refusal, the applicant would have to violate the principle of non-contradiction. But in so doing, the applicant would have to exit the recognized bounds of logical discourse. The upshot is that these two grounds for refusal must be summarily dismissed.

The cases referred to in the relevant section of the TMEP with respect to deceptively misdescriptive marks are not to the contrary. In none of these cases does one find a situation in which the Examiner (or opponent) asserted in a cumulative fashion that the mark at issue is both descriptive and deceptively misdescriptive.

After a lengthy prosecution, applicant seeks the reversal of what is now the examining attorney's sole remaining ground of refusal.

4

The two-prong test for whether a mark is deceptively misdescriptive has been set out as follows: "(i) whether the mark misdescribes the goods [or services] to which it applies; and (ii) whether consumers are likely to believe the misdescription." Glendale International Corp. v. U.S. Patent and Trademark Office, 374 F. Supp.2d 479, 75 USPQ2d 1139, 1143 (E.D. Va. 2005). See also In re Phillips-Van Heusen Corp., 63 USPQ2d 1047, 1048 (TTAB 2002) and In re Quady Winery Incorporated, 221 USPQ 1213, 1214 (TTAB 1984). The Federal Circuit also addressed the question of misdescriptiveness in Hoover Co. v. Royal Appliance Manufacturing Co., 238 F.3d 1357, 57 USPQ2d 1720 (Fed. Cir. 2001). In that case, the Court held: "'A mark may be 'deceptively misdescriptive' under § 2(e) if it misrepresents any fact concerning the goods that may materially induce a purchaser's decision to buy.' 2 *McCarthy on Trademarks* § 11:56." 57 USPQ2d at 1723.[4] The Court had earlier noted that in deceptiveness cases, the misdescription is "likely to affect the decision to purchase." 57 USPQ2d at 1723 (underlining added).

---

[4] The current section 11:56 of *McCarthy's* explains that: "A mark will be held 'deceptive' under § 2(a) only where the user of the mark knows that such misleading use will bestow upon the product an appearance of greater quality of salability than it has." 2 *McCarthy on Trademarks and Unfair Competition* (4th ed. 2006) § 11:56.

Ser No. 78083495

Similarly, the Glendale court emphasized that: "Where the misdescription *is* a material factor in the consumer's purchasing decision, the mark is not merely 'deceptively misdescriptive,' but 'deceptive.'" Glendale International, 75 USPQ2d at 1144 n. 10. Therefore, the misdescription must concern a feature that would be relevant to a purchasing decision.[5] If the misdescription is more than simply a relevant factor that may be considered in purchasing decisions but *is* a material factor, the mark would also be deceptive.[6]

We begin our analysis by noting that applicant's mark is simply the date "SEPTEMBER 11, 2001." On that date, at 8:46 in the morning, American Airlines Flight 11 slammed into the north tower of the World Trade Center. Shortly afterward, at 9:03, United Airlines Flight 175 struck the south tower of the World Trade Center. www.cnn.com, September 11, 2004. At 9:59 and 10:29 a.m., the south and north towers collapsed. Id. Also that same morning,

---

[5] For example, if pizza is sold under the mark FOUNDRY PIZZA and the pizza is not made in, or associated with, an old foundry, the fact that potential purchasers may believe that the pizza may be made in an old foundry building would not result in the mark being deceptively misdescriptive. In the Phillips-Van Heusen case, the board explained that for "a term to misdescribe goods or services, the term must be merely descriptive … of a significant aspect of the goods or services which the goods or services plausibly possess but in fact do not." 63 USPQ2d at 1051.
[6] The issue of whether the mark is deceptive is not before us.

6

American Airlines Flight 77 struck the Pentagon in Arlington, Virginia, and United Airlines Flight 93 crashed in Shanksville, Pennsylvania.  These plane crashes occurred after the planes were hijacked by nineteen terrorists.  These attacks killed more than 2,970 people.  Id.

As a result of the events of that day, the date, September 11, 2001, has been the subject of numerous books and media coverage.

> *What We Saw:  The Events of September 11, 2001, in Words, Pictures, and Video with DVD*
> www.powells.com
>
> *September 11, 2001*
> A collection of 150 front pages from major newspapers throughout the world, "September 11, 2001" presents a stunning, shocking gallery of headlines and images, revealing the world's reaction to the horrendous terrorist attacks of 9/11.
> www.powells.com
>
> *One Nation:  America Remembers September 11, 2001*
> This is about firemen going in amidst the rubble, but it is also about a Frenchman in Paris holding up a sign that says, "We are all Americans."  This is about our leaders taking charge, but it is also about schoolchildren in Iowa hanging an American flag on a tree in their backyard.  Beginning with the history of lower Manhattan, the book explains what happened on September 11, profiles many of the heroes, victims and rescuers…
> www.walmart.com
>
> *Above Hallowed Ground:  A Photographic Record of September 11, 2001*
> On the morning of September 11th, a new kind of horror shook the world.  Terrorists crashed two passenger airlines into the World Trade Center in the worst attack on U.S. soil in the nation's history.
> http://barnesandnoble.com

7

> *Tower Stories:  The Autobiography of September 11, 2001*
> No other book written about September 11th displays the compassion, the breadth of focus, and the exacting eye for historic details that Tower Stories offers on every single page.
> http://barnesandnoble.com
>
> *Capturing bin Laden:  Priority before 9/11?*
> NBC News
>
> *Living with Terror:  The World Speaks a Year After 9/11*
> WAMU – Award-winning journalists Robin Lustig and Deborah Amos hosted two-hour live event featuring call-outs by top foreign correspondents, comments from dignitaries, and questions from around the world.
> http://understandingamerica.publicradio.org
>
> *The Day America Changed:  Complete Coverage*
> In observance of the one-year commemoration of Sept. 11, the Fox News Channel and Foxnews.com present a special package of programming, stories, features and background material designed to honor and reflect on the day that America was forever changed.
> www.foxnews.com

The examining attorney noted that "September 11, 2001 appeared in 39,766 stories" in the computerized database he searched.  First Office Action at 2.  In addition, a Barnes & Noble search report for the keywords "September 11, 2001" identified 1,089 titles.

The evidence demonstrates that the date of September 11, 2001, has acquired special significance in America. For example, in an interview on September 14, 2003, Vice President Cheney was asked:  "Has the nation recovered from September 11, 2001?"  MSNBC, Meet the Press with Tim

Russert.  The Vice President's reply was:  "Well, I think in many respects, recovered, yes.  On the other hand, there are some things that'll never be the same."  Another website reports that:  "We knew life in America would never be the same after the terrorist attacks of September 11, 2001, but no one knew exactly how it would change." http://understandingamerica.publicradio.org.  The *Chicago Daily Herald* on February 21, 2002, reported that the "initiatives from Attorney General Jim Ryan helped to address some of the threats that are ever-present in our lives since Sept. 11, 2001."  A *Newsday* story on February 21, 2002, explains that:  "The events of September 11, 2001, show that a mass appeal is neither a safe nor an efficient way to collect blood."  The evidence that the examining attorney submitted establishes that the date "September 11, 2001" is commonly used as a direct reference to the terrorist attacks on that date.

"[F]or a term to misdescribe goods or services, the term must be merely descriptive, rather than suggestive, of a significant aspect of the goods or services which the goods or services plausibly possess but in fact do not." Phillips-Van Heusen, 63 USPQ2d at 1051.  A term is merely descriptive if it immediately describes the ingredients, qualities, or characteristics of the goods or services or

if it conveys information regarding a function, purpose, or use of the goods or services.  In re Abcor Development Corp., 588 F.2d 811, 200 USPQ 215, 217 (CCPA 1978).  Here, such goods and services as books in the field of history, ongoing radio programs in the field of news, and television news shows about the events of September 11, 2001, are described by that date.  Indeed, the date alone is a shorthand way of referring to the events of that day such as when Vice President Cheney was asked:  "Has the nation recovered from September 11, 2001?"  The evidence shows that many publications and other media concerning the events of September 11 have used the date in the title of the books, articles, shows, and similar goods and services.  From this information, we conclude that the term "SEPTEMBER 11, 2001" merely describes the subject matter of books and entertainment services concerning the events of September 11th.

However, applicant has maintained that:

None of applicant's books [is] on the subject of the events of September 11, 2001.

None of applicant's entertainment services will in any way cover the events of September 11, 2001.

Therefore, the mark "SEPTEMBER 11, 2001" would not merely describe applicant's goods and services.  But the record shows that the date of September 11, 2001, has been used to

describe numerous books, articles, and shows.  When the mark, "SEPTEMBER 11, 2001," is used to identify these goods and services and the subject matter of the goods and services is not concerned with the events of September 11, 2001, the mark is misdescriptive.  Therefore, the first prong of the test for misdescriptiveness is satisfied.

Next, we address the second prong, which is whether consumers are likely to believe the misdescription.  As described above, there have been numerous books, articles, and shows about the events of September 11th.  See, e.g., *What We Saw:  The Events of September 11, 2001, in Words, Pictures, and Video with DVD; September 11, 2001; One Nation: America Remembers September 11, 2001;* and *Above Hallowed Ground:  A Photograph Record of September 11, 2001.*  Consumers, upon seeing the mark "SEPTEMBER 11, 2001" in connection with applicant's books and entertainment services, would believe that they are simply additional books or entertainment services on the subject of the events concerning the terrorist attacks of September 11, 2001.[7]  While the nature of the misdescription would become known after consumers studied applicant's books and

---

[7] We add that the Federal Circuit has held that "book titles are often descriptive of book contents" and "this court's case law prohibits proprietary rights for single book titles."  Herbko International Inc. v. Kappa Books Inc., 308 F.3d 1156, 64 USPQ2d 1375, 1379-80 (Fed. Cir. 2002).

11

entertainment services, that does not prevent the mark from being deceptively misdescriptive.  See, e.g., In re Budge Manufacturing Co., 857 F.2d 773, 8 USPQ2d 1259, 1261 (Fed. Cir. 1988) ("Congress has said that the advantages of registration may not be extended to a mark which deceives the public.  Thus, the mark standing alone must pass muster, for that is what the applicant seeks to register, not extraneous explanatory statements").  Therefore, the second prong of the misdescriptiveness test is also satisfied.  This misdescription would be relevant to consumers who would be interested in books or entertainment services concerning the terrorist attacks of September 11, 2001, and the misdescription "may materially induce a purchaser's decision to buy" or use the goods or services. Hoover Co., 57 USPQ2d at 1723.

In response to the examining attorney's refusal, applicant essentially makes a semantic argument that its mark cannot be both descriptive and misdescriptive relying on Aristotle's principle of non-contradiction.  There are several problems with applicant's argument, the most important of which is that the examining attorney has withdrawn the descriptiveness refusal.  Therefore, even if this was a problem, it has now been eliminated.  Second, applicant asserts that the examining attorney "did not

refuse registration because the mark in question is descriptive or, in the alternative, if the mark is not descriptive, that it is deceptively misdescriptive. Rather, as stated above, the Examining Attorney refused registration because he ruled that the mark is at the same time both descriptive and deceptively misdescriptive." Brief at 9. This is not what the examining attorney did in this case. In the Office action dated April 25, 2003, the examining attorney refused registration on the grounds that (1) applicant's term failed to function as a mark, (2) the term was merely descriptive, and (3) applicant failed to comply with the examining attorney's requirement for information about whether the goods or services would concern the events of September 11, 2001. When applicant filed a response that asserted that its goods and services would not concern the events of September 11th, the examining attorney, in the February 26, 2004, Office action, continued the failure to function as a mark and merely descriptive refusals without additional comments but he added a new refusal on the ground that the mark is deceptively misdescriptive. The examining attorney explained (p.2) that "[i]f the applicant's goods and services are in no way related to the tragic events of September 11, 2001, then purchasers of the applicant's

13

goods are likely to erroneously believe that the applicant's books and entertainment services are on the subject of September 11, 2001." The examining attorney's Office action dated November 30, 2004, again continued the refusals for failure to function as a mark and mere descriptiveness and also made them final without additional comments and made the refusal on the ground of deceptive misdescriptiveness final and explained his rationale for this refusal.

Thus, the prosecution/examination history of this application contradicts applicant's argument that the examining attorney refused registration on the grounds that that "the mark is both descriptive and misdescriptive." Brief at 9. The refusals of mere descriptiveness and deceptive misdescriptiveness are simply alternative refusals that would encompass whatever explanation applicant provided concerning the subject matter of his books and entertainment services. When the examining attorney was convinced that applicant's goods and services would not relate to the events of September 11, he withdrew the descriptiveness refusal. But see footnote 3.

Therefore, we conclude that the mark "SEPTEMBER 11, 2001," if it were used on books and entertainment services

that do not concern the events of September 11, 2001, is deceptively misdescriptive.

DECISION: The examining attorney's refusal is affirmed.